IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION

ROBERT K. BAKER                                                        PLAINTIFF

       V.                          Civil No. 3:14-cv-03118-MEF

CAROLYN W. COLVIN, Commissioner,
Social Security Administration                                          DEFENDANT

## MEMORANDUM OPINION

Plaintiff, Robert K. Baker, brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of Social Security Administration (Commissioner) denying his claims for a period of disability and disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act (hereinafter "the Act"), 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3). In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. *See* 42 U.S.C. § 405(g).

## I.  Procedural Background

Plaintiff filed his application for DIB on February 23, 2012, alleging a disability onset date of January 1, 2010, due to hepititis C, neurofibromatosis, depression, and chronic back pain. (T. 112-114, 146) Plaintiff filed his application for SSI on June 27, 2012. (T. 115-120) His applications were denied initially on August 23, 2012 (T. 64-66, 67-70), and denied at reconsideration on November 7, 2012 (T. 73-74, 75-77). Plaintiff requested an administrative hearing (T. 78-79), and the hearing was held on April 17, 2013, before the Hon. Edward M. Starr, Administrative Law Judge ("ALJ"). (T. 28-57) Plaintiff was present and represented by an attorney. (T. 28, 30)

-1-

Plaintiff was 51 years old at the time of hearing, and he had a seventh grade education. (T. 31) He had past relevant work ("PRW") experience as an cut off saw operator, fork lift operator, auto mechanic, wrecker operator, commercial groundskeeper, and parts salvager. (T. 146, 164, 219, 238) He states that he last worked on January 1, 2010.[1] He reportedly stopped working because of his condition(s), testifying that he "couldn't do nothing." (T. 36, 146) He also testified that his last job, at a furniture factory, ended in late 2009 when he and a bunch of others were laid off, but that he did continue to do some clean-up work. (T. 49-50) He reported to a psychological examiner that his two most recent jobs ended when he was laid off. (T. 367) He received unemployment benefits for "probably about a year" and into the fourth quarter of 2011. (T. 51, 123-124)

On August 14, 2013, the ALJ issued an unfavorable decision finding that Plaintiff's back disorder and mood disorder were severe, but they did not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4. (T. 11-15) After discrediting Plaintiff's subjective complaints, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform light work, except that he would be limited to work involving only simple, routine, repetitive tasks in a setting where interpersonal contact is incidental to the work performed, and where supervision required is simple, direct, and concrete. (T. 15-20)

With the help of a vocational expert ("VE"), the ALJ determined Plaintiff could not perform his PRW, but that he could perform the requirements of light, unskilled representative occupations such as:

1.  Food processing workers: conveyor line bakery worker (DOT 524.687-022), spice mixer (DOT 520.687-062), and Mexican food machine tender (DOT 524.685-038), with 581 jobs existing

---

[1] Earnings records show, however, that Plaintiff earned $2,660.78 in 2010. (T. 135)

in Arkansas and 9,242 in the national economy;

2.   Cutting and shaving machine tenders: processed film cutter (DOT 976.685-010), zipper cutter (DOT 616.685-090), and box corner cutter (DOT 640.685.030), with 967 jobs in Arkansas and 35,067 in the national economy; and,

3.   Production workers: laundry folder (DOT 369.687-018), fabric layout worker (DOT 589.687-022), and seam steamer (DOT 789.687-166), with 2,984 jobs in Arkansas and 118,395 in the national economy. (T. 21-22, 239-240)

The ALJ then found Plaintiff had not been under a disability as defined by the Act from January 1, 2010 through the date of his decision. (T. 22) The Appeals Council denied Plaintiff's request for review on October 21, 2014. (T. 1-3)  Plaintiff filed this action on December 10, 2014. (Doc. 1) This case is before the undersigned by consent of the parties. (Doc. 6) Both parties have filed appeal briefs (Docs. 10, 11), and the case is now ready for decision.

## II.  Applicable Law

This court's role is to determine whether substantial evidence supports the Commissioner's findings. *Vossen v. Astrue*, 612 F.3d 1011, 1015 (8th Cir. 2010). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. *Teague v.* Astrue, 638 F.3d 611, 614 (8th Cir. 2011). We must affirm the ALJ's decision if the record contains substantial evidence to support it. *Blackburn v. Colvin,* 761 F.3d 853, 858 (8th Cir. 2014). As long as there is substantial evidence in the record that supports the Commissioner's decision, the court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the court would have decided the case differently. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015). In other words, if after

reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, we must affirm the ALJ's decision. *Id*. Thus, the Court's review is limited and deferential to the Commissioner. *See Ostronski v. Chater*, 94 F.3d 413, 416 (8th Cir. 1996); *Cline v. Colvin*, 771 F.3d 1098, 1102 (8th Cir. 2014).

A claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see also* 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D). A Plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require her to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his or her claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his or her age, education, and experience. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). Only if he reaches the final stage does the fact finder consider the Plaintiff's age, education, and work experience in light of his or her residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

-4-

### III. Discussion

Plaintiff raises two issues on appeal: (1) the ALJ erred in failing to find Plaintiff's borderline intellectual functioning and mild mental retardation to be a severe impairment; and, (2) the ALJ erred in failing to consider the provisions of SSR 82-63, the Medical-Vocational profiles showing an inability to make an adjustment to other work. (Doc. 10, pp. 9-11)

The Court has thoroughly reviewed the entire transcript. The complete set of facts and arguments are presented in the parties' briefs and the ALJ's opinion, and they are repeated here only to the extent necessary.

### A.  Step Two Analysis

Plaintiff first argues that the ALJ erred by not finding Plaintiff's borderline intellectual functioning and mild mental retardation to be severe impairments. Plaintiff points to a consultative examiner's findings that he has a full scale IQ of 59, and that he was functioning in the borderline intellectual range. Plaintiff states that he is functionally illiterate, and that "it could not be more obvious" that this impairment causes more than just slight limitations in the ability to perform basic work activities. (Doc. 10, pp. 9-10) The Commissioner responds that Plaintiff failed to meet his burden to establish any additional impairment, arguing that an IQ score is only one factor that an ALJ may consider in determining whether a claimant has a severe cognitive impairment; and, that if there is other evidence in the record that is inconsistent with a low IQ score, such as daily activities or prior work history, an ALJ may discount the IQ score and find no severe cognitive impairment. (Doc. 11, pp. 4-5)

At step two of the sequential analysis, the ALJ is required to determine whether a claimant's impairments are severe. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *Simmons v. Massanari*, 264

F.3d 751, 754 (8th Cir. 2001). An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1521(a), 416.921(a); *Bowen v. Yuckert*, 482 U.S. 137 (1987) (O'Connor, J., concurring). If the impairment would have no more than a minimal effect on the claimant's ability to work, then it does not satisfy the step two requirement. *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007). It is the claimant's burden to establish that an impairment or combination of impairments are severe. *Mittlestedt v. Apfel*, 204 F.3d 847, 852 (8th Cir. 2000). Severity is not an onerous requirement for the claimant to meet, *Hudson v. Bowen*, 870 F.2d 1392, 1395 (8th Cir. 1989), but it is also not a toothless standard, and courts have upheld on numerous occasions the Commissioner's finding that a claimant failed to make this showing. *See, e.g., Page v. Astrue*, 484 F.3d at 1043-44; *Dixon v. Barnhart*, 353 F.3d 602, 605 (8th Cir. 2003); *Simmons*, 264 F.3d at 755; *Gwathney v. Chater*, 104 F.3d 1043, 1045 (8th Cir. 1997); *Nguyen v. Chater,* 75 F.3d 429, 431 (8th Cir. 1996).

A "severe impairment is defined as one which 'significantly limits [the claimant's] physical or mental ability to do basic work activities.'" *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006) (quoting 20 C.F.R. § 404.1520(c)). The impairment must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques. A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by the claimant's statement of symptoms. 20 C.F.R. §§ 404.1508, 416.908.

Notably, the Plaintiff did not allege borderline intellectual functioning or mild mental retardation as disabling conditions. (T. 146) The fact that Plaintiff did not allege the impairment as

a basis for his disability in his application for disability benefits is significant, even if the evidence of the impairment was later developed. *See Smith v. Shalala*, 987 F.2d 1371, 1375 (8th Cir. 1993); *Dunahoo v. Apfel*, 241 F. 3d 1033, 1039 (8th Cir. 2001). Nor did Plaintiff testify that such conditions were severe, stating instead that his back disorder was the worst condition he suffers from. (T. 35)

Regarding the mental retardation issue, Plaintiff testified that "I can't read and write at all," and that he went to special ed classes. (T. 40-41) In a Disability Report completed May 30, 2012, however, Plaintiff indicated that he could read and understand English, could write more than his name, and did not attend special education classes. (T. 145, 147) Plaintiff's school records show that he had "learning problems" and "needs help he can't get in regular class." (T. 225) Plaintiff made all F's in seventh grade. (T. 226) Plaintiff clearly had difficulty in school, but his school records do not verify that he ever attended special education classes. Further, Plaintiff testified that he had "some, but not a whole lot" of trouble dealing with changes in his routine; that he is depressed "big time," but there are no treatment records for this; and, that while he does not always handle stress well, he has no problems getting along with others. (T. 41, 45, 47)

Plaintiff relies upon the findings of a consultative psychological examiner, Nancy Bunting, Ph.D., who saw him twice. During their first encounter on July 11, 2012, Dr. Bunting administered the Wechsler Adult Intelligence Scale-Revised ("WAIS-R"), and Plaintiff scored a verbal IQ of 68 and full scale IQ of 59. (T. 307) Dr. Bunting acknowledged that Plaintiff's IQ scores fell within the borderline intellectual functioning to mild retardation range, but she did not diagnose Plaintiff with any cognitive impairment. (T. 368-369) She was not convinced that Plaintiff's IQ scores were the result of impaired cognitive functioning, and she instead diagnosed Plaintiff with alcohol dependence and major depressive disorder. (T. 369) *See Banks v. Massanari*, 258 F.3d 820, 824 (8th Cir. 2001)

-7-

(consultative physicians' own comments discounted the claimant's IQ scores). When Dr. Bunting next examined Plaintiff on May 21, 2013, she again did not diagnose borderline intellectual functioning or mental retardation, but found he suffered from mathematics disorder, reading disorder, alcohol abuse, and depressive disorder NOS. (T. 464) Dr. Bunting commented that her best estimate was "he is functioning in the borderline range of intelligence," and that "he seemed much less depressed in this interview than previously." (T. 465) She noted that he can do all his self-care skills; has a driver's license and will drive on familiar roads; seldom shops alone, but he has no problems doing so; does regular chores; cooks using a microwave; has some contact with his neighbors; and, he has friends and attends church every Sunday. (T. 465-466) She reported that he communicated and interacted in a socially awkward manner given his stutter, but that he communicated in an intelligible and effective manner. (T. 466) She concluded that he has the ability to cope with the typical mental/cognitive demands of basic work-like tasks; the ability to deal with co-workers and supervisors; a very limited ability to deal with the public due to his appearance; a fair ability to handle work stress or changes; he can follow instructions; attend and sustain his concentration on basic tasks; some ability to sustain persistence in completing tasks for at least short periods of time; and, some ability to complete work-like tasks within an acceptable time-frame unless his pain interferes. (T. 466) She noted on May 21, 2013 that his pain "is now under better control," being reported on a scale of 1-10 as a 4 or 5 (without medication), instead of being an 8 or 9 as reported on July 11, 2012. (T. 463, 465)

The ALJ considered Dr. Bunting's estimation of Plaintiff's IQ, but he noted that Plaintiff was not diagnosed with mental retardation prior to attaining the age of 22. (T. 17) *See Clark v. Apfel*, 141 F.3d 1253, 1255-56 (8th Cir. 1998) (claimant's IQ scores were properly rejected because they were

based on a one-time exam, inconsistent with daily activities, and there was a lack of proof of mental retardation prior to age 22). Based on Dr. Bunting's two examinations and reports, the Plaintiff has not been diagnosed with mental retardation, and Dr. Bunting indicated that his level of functioning was not consistent with a diagnosis of mental retardation. (T. 370, 464)

More important to the ALJ than the IQ score was the fact that Plaintiff had a good work history, including semi-skilled jobs. (T. 17) Earnings records show 30 years of employment going back to 1980. (T. 128) The VE classified several of Plaintiff's jobs as either skilled or semi-skilled. (T. 238) *See Cox v. Astrue*, 495 F.3d 614, 618-619 (8th Cir. 2007) (ALJ correctly discounted claimant's IQ scores based on activities evidencing good adaptive functioning, including past relevant work as a CNA, a semi-skilled job). In addition to Plaintiff's work history, the ALJ noted that Plaintiff reported no problems in taking care of his personal needs, performing regular household chores, driving a car, attending church, as well as communicating and interacting adequately and effectively with others. The ALJ concluded that all of these findings and activities are inconsistent with Plaintiff's contention of mental retardation. (T. 17) Moreover, the ALJ considered Plaintiff to be a "less reliable informant" in that he "has a tendency to vary his statements." (T. 17-19) Nonetheless, the ALJ gave consideration to Plaintiff's depression/mood disorder, and his poor math and reading skills, in limiting Plaintiff's RFC to simple, routine, repetitive, unskilled work.

Taking into account Dr. Bunting's reports, and other evidence on the record concerning Plaintiff's alleged borderline intellectual functioning and/or mild mental retardation, substantial evidence supports the ALJ's determination that neither of these conditions rose to the level of a severe impairment. The Court reaches this conclusion with full awareness of the very real difficulties

Plaintiff appears to experience. Those difficulties, however, are not sufficient to merit reversal because "we will not reverse the decision even if substantial evidence also supports a different outcome." *Stormo v. Barnhart*, 377 F.3d 801, 805 (8th Cir. 2004) (citing *Fredrickson v. Barnhart*, 359 F.3d 972, 976 (8th Cir. 2004). On balance, the Court finds the ALJ's step two analysis to be supported by substantial evidence, particularly in light of Plaintiff's acknowledged activities and his years of employment in semi-skilled and skilled jobs.

## B.  SSR 82-63

Plaintiff also faults the ALJ for not considering the provisions of SSR 82-63, which gives clarification to the two medical-vocational profiles which show an inability to make a vocational adjustment to other work pursuant to 20 C.F.R. §§ 404.1562, 416.962. (Doc. 10, pp. 10-11) *See* S.S.R. No. 82-63, 1982 WL 31390 (1982). Plaintiff's argument is that he has worked his whole life "in simple but physically punishing work," and that considering his illiteracy, seventh grade education, constant back pain, mood disorder, and work history, "it is simply unrealistic to believe this man can actually make a productive adaptation to other work." (Doc. 10, p. 11) While Plaintiff recites the two profiles of SSR 82-63, his conclusory argument fails to address specific evidence in the record to support his contention that the medical-vocational profiles apply in this case.

The characteristics of these two medical-vocational profiles are: (1) marginal education and long work experience limited to arduous unskilled physical labor, and (2) advanced age, limited education and no work experience. As Plaintiff has work experience, to be considered disabled under the medical-vocational profiles, he must: (1) have only a marginal education; (2) have at least thirty-five years of work experience performing arduous, unskilled physical labor; and, (3) be unable due to a severe impairment to return to such labor. 20 C.F.R. §§ 404.1562(a), 416.962(a).

-10-

While Plaintiff's work history dates back to 1980, the record plainly does not support a finding that Plaintiff has *at least thirty-five years* of work experience performing arduous unskilled physical labor. Further, several of Plaintiff's jobs were at the semi-skilled or skilled level. Thus, this medical-vocational profile does not apply. The Court finds no error in the ALJ's determination that Plaintiff could perform other work in the national economy.

## IV. Conclusion

Having carefully reviewed and considered the entire record, the Court finds that substantial evidence supports the ALJ's Decision denying Plaintiff DIB and SSI benefits. The ALJ's Decision should be, and it hereby is, affirmed. Plaintiff's Complaint should be dismissed with prejudice.

DATED this 19th day of February, 2016.

/s/ *Mark E. Ford*

HON. MARK E. FORD
UNITED STATES MAGISTRATE JUDGE

-11-